Good morning, ladies and gentlemen. It's a beautiful day in San Francisco, and we'll proceed to hear the cases for argument in the order that they are listed. The first two cases, Henderson v. Terhune and Heisley v. Arizona Department of Corrections, are submitted on the briefs, and it is so ordered. We'll hear the first case for argument, which is Hendon v. Lamarque. Good morning, Your Honors. My name is Mark Ebert, and may it please the Court, I represent Mr. Carlos Wayne Hendon, and I would like to reserve three minutes of my time for rebuttal. You may. You'll have to help keep track of your own time, because that's the full time remaining. Thank you, Your Honor. I'd like to start for the first couple of minutes by seeing if I can simplify these complex facts a little. And then I want to move on to some very important issues relating to the calculation of equitable tolling and the unique problems that petitioners, pro se habeas petitioners face in California state prisons. As to the facts, there are only three main relevant time periods, and during almost all of two of those time periods, Mr. Hendon's lack of access to the tools that he needed to prepare a habeas petition are undisputed. From September 27, 1996, to February 8, 1997, Mr. Hendon was kept locked in his cell in New Folsom Prison as part of a prison-wide lockdown caused by race riots that lasted for almost five months. That's not disputed, nor is it disputed that Mr. Hendon was never a preferred legal user who was entitled to use the library during such lockdowns. Prison records show that he had no law library access at all during that period. From May 8, 1997, to January 14, 1998, Mr. Hendon was in solitary confinement without his personal legal files, legal materials. It doesn't matter if he had access to the law library during that time, because it's almost useless without your case files and personal legal materials. And from January 14, 1998, to August 11, 1999, Mr. Hendon was subjected to one lockdown after another, one of which lasted more than six months, again, without the PLU status that he needed that would have entitled him to law library access under prison regulations. Again, not disputed. The prison documents are not disputed. Sotomayor, why didn't he have the preferred status? Because until you file a case, you cannot meet the requirements for it. The requirements for preferred legal user status are that you have a pending case in court with a verifiable legal deadline, and they use they ask for a court document to verify that deadline. So it's kind of a catch-22. I mean, you can't have access to the tools you need to file a case unless you've actually got one on file, and you can't get one on file until you have access to the law library and to your personal legal materials. Again, this third time period is not disputed, although in the case of five lockdowns, we've not been able to get the precise states that those lockdowns ended. Is there any dispute over the fact that with regard to the administrative segregation that he was responsible for that? No, Your Honor, but I suppose that the State would argue that there's no dispute that he was responsible for being in prison in the first place. Well, without regard to why he was there originally, the question I really have is you are seeking equity here, as I understand your argument. And the black letter principle says that one who seeks equity must come with clean hands. And if one has stalked the prison librarian and engaged in sexual misconduct in the library and ends up in administrative segregation, shouldn't the court consider that in determining whether or not your client is entitled to equitable tolling under AEDPA? I think that what the court should consider is that even the CDC admits in its regulations and in the supplemental memoranda or letters that the State has submitted that every single prisoner in that prison, including prisoners in administrative segregation, are entitled to reasonable access to the courts. That's a constitutional issue that the State agrees. So your answer to my question is that it's irrelevant that his own misconduct put him in administrative segregation? In my opinion, it is not relevant why he was there, because no matter what he did, no matter where he was in the prison system, he's still entitled to access to the courts. The district courts seem to think that that was significant. Did she not? I don't specifically recall that statement. I'll take your word for it. Fine. Well, assuming that I'm correct in my reading of her order, what deference do we owe the district court's determination that, in essence, that he should be held to some extent responsible for his conduct? I don't think that's a finding of fact. I think it would fall under the de novo review standard. Is it? Is it a finding of fact or is it a mixed question of law and fact? She determines, as a matter of fact, that he engaged in misconduct. Then the question is what's the legal consequence under AEDPA of that? Right. But that would be de novo review also. Okay. What Mr. Hendon has been saying consistently all along is that he had, quote, just a few days in between, end quote, all of these restrictions where he had access to both the law library and his personal legal materials. And he used that time, which the district courts said amounted to no more than 97 days, but almost certainly far less than that, to prepare his State habeas petition, which is something that the Federal courts encourage him to exhaust before he comes to Federal court. The strongest evidence to support his declarations that he had just a few days in between to work on his petitions is the fact that he actually went to the law library only five times over a three-and-a-half-year period when he also had access to his personal legal materials. And although the prison records we were able to get during two years of discovery don't cover every time period that we would like, every document that we received does, in fact, support Mr. Hendon's version of his conditions of incarceration. And, frankly, those conditions were terrible. So are you arguing that we should basically just stop the clock for the entire 1,156 days? Yes, Your Honor. And, of course, the district court found that the stop, the clock, well, that begs the question of how you calculate it. But she found that there was tolling for 1,009 of those days. I submit to you that there are additional days that the stop, the clock should be stopped, too. I guess I'm not following your argument. My understanding is that this case was here before. Uh-huh. And we said that the judge should not automatically exclude all these periods. Right. But it was largely fact-based as to whether or not the tolling should occur. So then there was counsel appointed. There were all kinds of evidentiary proceedings to see what actually happened in the prison. Right. And the district court concluded that he was not entitled to equitable tolling. And you're telling us that as a matter of law, all of his time should have been excluded because of the – because he couldn't have access to his papers? Well, remember, I think that what we're – I think that what Judge Tallman's question goes to is what method you use to calculate equitable tolling. Because the court – the district court gave him credit for all but 97 days plus 20 at the other end, which I think is irrelevant to this, for all but 97 days. And the question is, should that be enough to stop the clock and to say that, okay, 97 days, Congress gave him 365. As long as he got it in, that that was timely. There's really only one clear and fully reasoned Ninth Circuit case that I know of that actually weighs the two kinds of equitable tolling calculation and addresses the issue of which one should be applied, and that's Socop Gonzales, which goes through all of the practical policy and separation of powers reasons why, if courts are going to use equitable tolling, they should use the stop-the-clock method because it's more certain, more equitable, more fair, more uniform, and it doesn't impinge on Congress's authority and its desire to create a one-year statute. Well, but Congress has done something different in AEDPA that we didn't face in Socop. We had a BIA regulation that said if you don't file your petition to reopen within 90 days, that's it. And we found that equitable tolling could apply to extend that 90-day period. Here Congress has specifically said in AEDPA you get one year. And if we are to extend the rule in Socop, you are asking us to increase that one-year period on equitable grounds to almost four years. And that seems to me to be a stretch given the congressional preference for a shorter period rather than a period that's four times as long. I don't really think of it, Your Honor, as an extension of that time. I think that if the clock has stopped because he's locked in his cell and can't use the library and can't get his case files, I don't think that you're extending the time period. You're using equitable tolling. Well, Congress provided an exception, but it talked about an impediment. But then it also says when that impediment is removed, then things start running again. And to get to the Chief's question, didn't we tell the district court to conduct what now has amounted to two years of discovery and factual inquiry in order to decide when an impediment existed and when it was removed? And we now have that answer. And her answer is you're not entitled to equitable tolling for the whole four-year period. But, Your Honor, again, her answer, which I think makes assumptions that are not completely warranted to get to 97 days, her answer was 97 days. And it's a question of law whether you stop the clock tolling or what I would call the I-know-it-when-I-see-it method of tolling, which is look at how many days are left and say, could he have done it? I mean, I think that you can't do that. I think we understand your position. We'll give you a minute or so on rebuttal, but we think it would be helpful to hear from the government. Gannon, Jr.: Good morning, Your Honors. Christopher Grove for the Attorney General's Office. Petitioner's argument is based on two totally incorrect assumptions, one of which is because he's on lockdown, he's not entitled or unable to visit the library. And that simply is not true. For example, one of the periods that he alleges a lockdown from February 19th, 1998 to March 3rd, 1999, the records show, and it's undisputed, that he visited the library on seven occasions during that period of time. So just because there are modified programs or lockdowns does not mean that the Petitioner was denied access to the library. What do we do with the district court's finding to the contrary? Your Honor, the district court assumed all – if there was any dispute in the facts, the district court gave the Petitioner the benefit of that. And the district court then determined, based on the Petitioner's concession, I guess, that there were 117 days in which there was no lockdown and he had access to the library, because this is what the Petitioner conceded. Is the discrepancy in numbers involving the 20 days right at the end? Well, no, Your Honor. I'm talking about 97 or 117. I think that Petitioner's counsel concedes also that he had additional 20 days after the denial of the State Supreme Court habeas petition in which to file. So I don't think that there's any argument. What counsel is arguing is that the 97 days is before he filed his State petition, which told the statute as a matter of statute. The other – the problem with – really with the district court's legal determination and with Petitioner's argument is that he assumes that he's entitled to equitable tolling. SOCOP doesn't come into play at all until he's entitled to equitable tolling. And our argument is if the defendant or if the Petitioner can go to the library on 17 occasions and receive materials on another 11 occasions, there was no impediment. There was no rule. So your position is that the district court was right, but for the wrong reasons? Perhaps. It was right for one reason, Your Honor. But there's an additional reason, a more fundamental reason. The district court felt, like I say, accorded the Petitioner – how do I say this? Accepted all of his representations as disputed facts and said, even doing that, the Petitioner loses. Are you suggesting that those weren't findings, but just assumptions for purposes of decision and they're dependent on your ultimate decision? I think the district court's order says that, Your Honor. It says that I – even assuming that we accept all disputed issues in the Petitioner's favor, he still has failed to prove as a matter of law that he's entitled to equitable tolling. I mean, essentially, because the thing went back for discovery and we provided records showing that the Petitioner did go to the library on 12 occasions, I think, and received page materials on another 11. And as well, the lockdown materials showed that there were apparently 97 days in his library. How much of the time that he was going to the library was he deprived of his personal legal files? There was a – well, that's a disputed issue that the judge, again, gave the Petitioner the benefit of the doubt. We have a log showing that the papers, that the files were received. The Petitioner says, well, I didn't receive them. So that's one issue there. Even omitting that period, there is no dispute that the Petitioner had his file and visited the library on at least seven occasions and received page materials on additional occasions. At that – at a different facility, at a subsequent occasion, on a subsequent occasion. The – so basically, we shouldn't even get to the issue in SoCOP, because the defendant hasn't proved that he was – anything was done by the State that made it impossible for him to file his petition. And this – the other issue I'd like to address, counsel characterizes it as mudslinging, but the fact of the matter is that one of the – the Petitioner is claiming that the State prevented him from going to the library when, in fact, they sent him to the library and he engaged in serious sexual misconduct and was removed. And he did this on repeated occasions. This isn't a situation where, well, he committed a crime, therefore he shouldn't have access to the library. This is a situation where the defendant caused the condition that he alleges prevented him from filing his petition. And am I correct in reading the district court's order? Did the district court essentially consider that fact in deciding not to grant him equitable tolling for that period? You know, Your Honor, I think – I don't recall that the district court relied on that. I think what the district court did is say, okay, you – it's undisputed, you had 117 days where there were no lockdowns, and over this period of time, and you have not proved it was impossible for you to file. But is that our law? Excuse me? Is that our law? Is what our law, Your Honor? That if you have enough time, in hindsight, that you could have – No, absolutely not, Your Honor. The standard is, and it's well accepted and clear, is that the Petitioner has to prove that the State did something or that something happened outside of Petitioner's rule that made it impossible to file. That's the issue. He has to do that before you get to calculating days or whatever. He has to show the State did something that kept him from filing. And in this case, he simply hasn't made that showing. So it's not a question of, well, you didn't let me go to the library on Tuesday because there was a lockdown, therefore I get an additional day. So the district court was right for the wrong reason. I mean, as I read it, there was a kind of a stop clock kind of thing where she was saying if we give you the benefit of the doubt that you couldn't do it all this time, but you still could have done it in this time. Well, that I don't think is right, because that means that you have to know what's going to happen to you in the future. Right. Well, and you simply don't need to get there. I mean, the simple fact of the matter is the lockdowns didn't prevent him from going to the library. He had ample time to file. He caused conditions that prevented him from attending the library at certain periods. How does the 30-day rule factor into this, the library's rule, that you're a preferred user if you? Well, Your Honor, the – this is another question. The rules are flexible. It is true that under – and I mean, the CDC has its own reasons for what it does, but it's true that a PLU has to have a deadline and a court-ordered deadline. But it's also true that just because you're not a PLU doesn't mean – if you're just a general population inmate, doesn't mean you don't get to go to the library. As the records show, in fact, you do. I mean, even during lockdowns. The PLU is preferred legal user, and that just means that they get greater access. But it is true that you have to have a – at least according to the regulations, both librarians submitted memoranda that said, well, if we do our best to accommodate all inmates and if an inmate comes to us and says, look, I've got to file this thing within a particular day, we will do that. And this isn't some secret policy. This isn't some secret issue that the defendant has to know about to come and ask, hey, I've got this problem. So unless the Court has any questions, I'd – Kennedy. Yes, Your Honor. One, I haven't heard you discuss the issue of whether or not lockdowns constitute extraordinary circumstances, because as I understand our law, we don't even get to equitable tolling if the Petitioner can't convince us that lockdowns and administrative segregation amounts to an extraordinary circumstance. Well, that's true, Your Honor. We've – the reason I didn't get to it is it's pretty – it's pretty well discussed in both the briefs, and we've gone through that. It is true that lockdowns in and of themselves are not, if they're for appropriation. Well, let's say – let's say the prison then says, look, ordinarily, we're just going to lock people in their cells and not let them out and not let them go to the library, but it's going to be an ordinary thing. Since it's not extraordinary, then time runs and they never get to file. Well, Your Honor, that – without conceding anything, that likely would be an unconstitutional impediment if you simply were locking them down to keep them from going to jail. It puzzles me that if you prevent someone from filing, that it has to be an extraordinary occasion. If you do it ordinarily, then we don't toll. That just strikes me as counterintuitive. Well, I don't think that the law is that if there are, you know, irrational lockdowns or arbitrary lockdowns, that the defendant is not entitled to claim equitable tolling. I think there are two basic – two prongs to this. One is the impediment prong. And in that situation, the defendant has to prove that the lockdowns or whatever were unconstitutional. In other words, they were irrational or arbitrary or for whatever reason. Well, no, but that's not quite where it is. Go ahead. Well, no, I just mean you have a lockdown for a perfectly good reason. There's a race riot. He didn't have anything to do with it. He's locked down. And you lock him down for a year, and if your ordinary lockdown prevents him from getting to the library or giving him access to legal materials, you say, well, it's too bad, at the time ran, it was not an extraordinary situation. It was perfectly reasonable. Too bad. Your Honor, I could see how that could cause problems, but that simply isn't the situation. Well, I understand. But don't you really mean to say that they – that when we talk about extraordinary, we sort of – we sort of assume that a prisoner is going to have, in the ordinary – in the ordinary is that the prisoner will have access? Yeah. And I don't think when they say extraordinary, they mean that lockdowns have to be unusual. I think they have to – when they say extraordinary, it has to be something outside the Petitioner's control. That is just not, you know, a run of, you know. That's a sensible answer. Okay. If the Court has any other questions, I'd be willing to answer. Thank you. Your Honor, can I have one minute? Mr. Rubach? Thank you. I'll be very brief. First of all, what the records showed before the district court is that Mr. Hendon attended the law library 12 times over – over three and a half years, only five of which were times that he was allowed to use the materials and had his own legal materials with him, as opposed to using the copy machine or not having them. And all of those were between lockdowns, which is consistent with what he's saying, is that he had just a few days in between. And secondly, there are – All of the times he had his materials with him were between lockdowns. I'm sorry? All of the times he had his materials with him were between lockdowns. Yes. I believe all of the times he went – I think that all of the times he went to the law library were between lockdowns, I believe. And secondly, there are two Ninth Circuit cases and one district court case from California, which appear to apply stop-the-clock tolling in habeas cases. That's Corgiasso v. Ayers, Lott v. Mueller, and Lewis v. Mitchell. And so I don't think it's only been applied in the – in the INS context. Thank you, Your Honors. Thank you, Counsel. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States – well. Kaling, was it? Kaling, yeah. Yeah. At all? At all. Yeah.
judges: Schroeder, Canby, Tallman